# Michael F. Handley and Martin E. Handley, Appellants, *v.* Mary Barrett, Owen Barrett, Peter Barrett, John Barrett, James Barrett, Ellen Barrett, John J. Gordon and Thomas Gordon.

[Marked to be reported.]

*Ejectment—Adverse possession—Instruction for jury.*

Where in an action of ejectment the defendant claims title by adverse possession, the whole matter is exclusively for the jury under instructions from the court as to what constitutes such adverse possession.

*Evidence—Adverse possession—Ejectment.*

Where the testimony disclosing continuous notorious adverse occupation of the land in question by the defendants and those under whom they claimed, for purposes of residence and for domestic uses, for a period of nearly forty years, was voluminous, precise, definite and positive, such evidence not only warrants the submission of the case to the jury but justifies a verdict for defendant.

*Ejectment—Adverse possession—Permissive occupancy.*

Where a deed is taken for land which is part of a larger tract belonging to the vendor, it does not follow that the vendee cannot acquire by adverse possession land outside of his deed, which was a part of the tract from which his purchase was made.

*Ejectment—Evidence—Permissive occupation.*

Defendant having purchased a portion of a larger tract claimed title by adverse possession of adjoining lands of which the paper title, originally in defendant's vendor, had been conveyed to the plaintiff. For the purpose of showing that the defendant's occupancy of the disputed land was permissive and subservient to vendor's title, plaintiff offered to prove that there was a memorandum on vendor's sales book defining the limits of the land admittedly sold vendee; this followed the account in vendor's ledger. *Held,* (1) that the offer was properly rejected by the court below; (2) that even if admitted the evidence would not have justified the inference that the land in dispute was occupied by defendant in subserviency to vendor's title.

Argued Feb. 25, 1896.    Appeal, No. 131, July T., 1895, by plaintiffs, from judgment of C. P. Lackawanna Co., April T., 1892, No. 239, on verdict for defendant. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.    Affirmed.

Ejectment.    Before PURDY, P. J.

It appeared from the evidence that the paper title was admittedly in the plaintiffs who had purchased from the Lackawanna C. & I. Co. a tract of land of which the land in dispute was a portion. In the deed to plaintiffs the vendor expressly exempted from its warranty any liability for any claim of defendants to any portion of the land acquired by adverse possession.

Defendants produced evidence of adverse possession in part by residence and occupancy for domestic purposes for nearly forty years.

Plaintiffs introduced evidence of the purchase by defendant of a lot of land, forming a portion of a larger tract of which the tract in dispute formed part, from the Lackawanna C. & I. Co.

Plaintiffs offered to prove, for the purpose of showing a permissive occupancy by defendants in subserviency to their vendor's title, " That there is memorandum of sale on sales book of Lackawanna C. & I. Co. and defendants, of the lot admittedly purchased by said defendants, and that there is no other contract in existence," which offer under objection was refused. [1] This offer was followed by an offer in evidence of a memorandum in sales book of the Coal Co. showing boundaries and terms of sale of the lot sold defendants by the Coal Co. to be followed by an offer of the ledger account of vendors charging the parties, which offer was also rejected. [2] The court left the case to the jury upon the question of adverse possession.

PURDY, P. J., charging the jury in part as follows :

[The defendants claim that they have acquired a good title to the property in question here, under this statute, by reason of the possession of the property by them, or by those under whom they claim, for the statutory period of twenty-one years, and this is the issue between these parties, which you, gentleman of the jury, are sworn to try and determine in this case. This statute was enacted by our lawmakers for a wise purpose ; it is an old statute passed in 1785 ; experience and observation had taught the lawmakers that it was necessary that a time, within which parties having a right should assert that right, should be limited, and in respect to real estate the right to enter and take possession of real estate is limited to twenty-one years. If a person having such right fails to exercise it within that time, his right is forfeited. There ought to be no sentimen-

tality or prejudice against a defense of this nature. We are here simply to determine which of the parties to this action is entitled to the possession of this property, under the law and the evidence in this case. It is the duty of the court to explain to you the law applicable to the case, as we understand it, and the questions of fact are entirely for the jury.] [3]

\*    \*    \*    \*    \*    \*    \*    \*    \*

Our courts have construed the meaning of this statute of 1785, and have defined the character of the possession necessary to give title under it. That possession, they have said, must be adverse, that is, it must be against the real owner. It must be an actual possession, it must be a visible possession, not covert, secret. A person by going upon a piece of woodland, away from habitations, and building a shanty where no person would see him, where the owner would not see him, could not acquire title to property by keeping it any length of time. It must be a visible possession; it must be notorious, that is such as would be known by those observing it. It must be exclusive, an exclusive possession as against the owner, not in connection with the owner, but exclusive of the owner. And it must be continued, unbroken for the statutory period of twenty-one years. Any interruption of the continuity of the possession, for any length of time, would prevent the running of the statute against the owner. And by interruption we do not mean a casual leaving of the property, but if the party abandoned or left the premises with the intention of remaining away for any length of time, surrendering the possession, that would prevent the running of the statute against the true owner, and when he returned, the statute would commence again at the time of his return, and the former possession could not be tacked upon the latter possession to make the twenty-one years. The presumption of law is that a person who is an intruder upon property, and he must first be an intruder, intends to hold it for himself, and this presumption remains until it is rebutted. If a party taking possession intends to hold subject to the will of the owner, then the possession is not adverse. Possession by permission of the owner is not adverse. The intruder must claim and act as if he owned the property.

With relation to the continuity of the possession, that is with relation to any interruption, we would say that a temporary

absence for a special purpose would not break the continuity, and prevent the running of the statute.   It is in evidence in this case that sometime during the time when these defendants allege they held the possession of this property, they moved out of the house ; they left it a certain time in consequence of the overflow of the brook, as was testified to by Mrs. Barrett, but that they subsequently returned ; that during the time they were away they kept horses there, and perhaps some articles of personal property, I do not recollect exactly what the witness testified upon that subject.   But, if that be true, that would be a sufficient retention by the parties such as not to break the continuity of possession, which they might acquire by reason of holding this property in the manner which has been testified to. Actual residence upon the property is not necessary to constitute an adverse possession.   An adverse possession may be by cultivation ; by inclosing the property, maintaining an inclosure around the property, or by any other open and visible means by which the owner may know that the person asserts ownership and exercises acts of ownership over the property.   And use of the property or premises in common with other people, in common with the public, such as for crossing and recrossing, does not constitute adverse possession.   A certain well defined use might give a prescriptive right to continue such use ; this is not, however, what is meant by adverse possession, as applicable to this case.

[If the parties, the defendants here, and their ancestors occupied any part of the lot in question here by buildings or by continuous use, such as cultivation from year to year, then to that extent, if this continued during the statutory period, to such extent they would be entitled to hold this property, under the statute relative to adverse possession.] [4]

The court answered points by plaintiff as follows :

1. Under all the evidence in this case, the verdict must be for the plaintiffs for the land described in the writ.   *Answer :* Refused.   The questions of fact here are for the jury. [5]

2. Where one purchases land of another and the lines are definitely described in the deed, he and his successors are estopped from claiming that he was at the time of the purchase holding adversely to his grantor any part of the land of such grantor beyond the boundary lines mentioned in the deed. *Answer :* Refused as applicable to this case. [6]

3. Under the evidence in this case the ancestors of the defendants and the defendants were not holding the land in dispute by adverse possession from 1851 to 1857.  *Answer:* Refused. [7]

4. When the heirs of John Gordon and Owen Barrett accepted a deed from the Lackawanna Iron & Coal Company for lot one in block number forty-three, they acknowledged the title of the land to be in the Lackawanna Iron & Coal Company, and that they had taken possession of all the land claimed subject to the title of said company.  *Answer:* This point is refused as a whole.  The first part of this point and the proposition of law embraced in the first part is correct as we view it, that when the heirs of John Gordon and Owen Barrett accepted a deed from the Lackawanna Iron & Coal Company for lot one in block forty-three, they acknowledged the title of the land embraced in that deed to be in the Lackawanna Iron & Coal Company, but it is refused as a whole.  There is nothing in this deed to show any ownership in or claim by the grantors of the land in dispute, or to show any recognition by the grantees of any such claim of ownership, or that the grantors had any knowledge of any such claim of ownership, and there is no parol or other evidence in the case that the Lackawanna Iron & Coal Company, or any other party, ever made claim to the defendants or any of them, or to the persons under whom they claim, of ownership in these lands in question here, until the conversation between C. F. Mattes and Mrs. Barrett, testified to by him as occurring somewhere in the neighborhood of ten years ago.  I think I am correct in that statement, and I recollect no evidence of the kind. [8]

*Errors assigned* were (1, 2) rulings on testimony; (3, 4, 5, 6, 7, 8) above instructions, quoting bills of exception, evidence and instructions.

*S. B. Price,* him with *John P. Kelley* and *Joseph O'Brien,* for appellants.—The acceptance of a deed from a grantor by a grantee in possession is an acknowledgment of the title of the grantor.  Where a person thus acknowledges the title of another his possession is not adverse: Price on Limitations and Liens, pp. 79, 80, 103–107 inclusive, and cases cited: Rung v. Shoneberger, 2 W. 27.

If a party by conduct admits that he holds possession of land subject to the will of the owner, his possession is not adverse, and such an admission tolls the statute : Criswell v. Altemus, 7 Watts, 581; Sailor v. Hertzogg, 2 Pa. 184; Paterson v. Reigle, 4 Pa. 204.

Where the entry is permissive the statute will not begin to run against the lawful owner until adverse holding is declared and notice of such change is brought to the knowledge of the holder of the legal title : 1 Am. & Eng. Ency. of Law, 251; Eddy v. Mars, 53 Vermont, 462.

Where a map or town plot made by the proprietor of lands on which the town is located is referred to in a deed by the proprietor for one or more of the town lots, it becomes a material and essential part of the conveyance and has the same force and effect as if it were incorporated in the deed : Burgess & Town Council of Birmingham v. Anderson, 48 Pa. 253; Ferguson's Appeal, 117 Pa. 451; Schenley v. Pittsburg, 104 Pa. 472.

This is not a case of ordinary possession of land taken without the consent of the owner; but it is a case where the possession is taken with a recognition of the title of the owner : Dikeman v. Parrish, 6 Pa. 210 ; Cook v. Nicholas, 2 W. & S. 27; Donovan v. Driscoll, 93 Pa. 509; Long v. Mast, 11 Pa. 189 ; Bannow v. Brandon, 34 Pa. 263 ; Brandon v. Bannow, 38 Pa. 63.

It has been decided that where one who owns land adjoining that of another purchases of the other a parcel bounded by his own, and the land is definitely described in the deed, he and his successors are estopped from claiming that he was at the time of the purchase holding adversely any part of the land beyond the boundary line therein described : 2 Herman on Estoppel, 821, sec. 688; Root v. Crock, 7 Pa. 378; Hodges v. Eddy, 38 Vt. 349; Olwine v. Holman, 23 Pa. 279.

*John F. Scragg* and *Lemuel Amerman*, for appellee.—A vendee holds adversely to all the world, and has the same right to deny the title of his vendor as the title of any other party : Merryman v. Bourne, 9 Wall, 592.

The law knows no subserviency of possession or priority of interest in possession between a vendor and a vendee.

In the language of this court in Jones v. Porter, 3 Penrose & Watts, 132, a vendee in fee derives his title from the vendor, but his title though derivative is adverse to the vendor; he enters and holds for himself: Society v. Town of Pawlet, 4 Peters, 480–506; Blight's Lessee v. Rochester, 7 Wheaton, 535–548; Bradstreet v. Huntington, 5 Peters, 401–440; 2 Dembitz Land Titles, 1399; Jones v. Porter, 3 Penrose & Watts, 132; Merryman v. Bourne, 9 Wall. 592.

Opinion by Mr. Justice Green, July 15, 1896:

When the plaintiffs took their deed in September, 1891, from the Lackawanna Coal & Iron Company, for the tract of land which embraces, as a part of it, the land in dispute in this action, it was with the stipulation contained in the deed that it was made expressly subject to all claims on the part of the defendants by reason of occupancy and adverse possession. Further the plaintiffs expressly released their grantor " from any and all claims of every kind and nature whatsoever on account of any such encroachments upon the land hereby conveyed, or any claims of the aforesaid J. J. Gordon, Catherine Blewitt and Ellen Barrett and those claiming under them or the claim of any other persons with reference to a right of property in and to any portion of said land." The claims of the defendants by adverse occupancy and possession of the land in dispute were also expressly excepted from the operation of the warranty clause of the deed.

It thus appears not only that the plaintiffs took their deed with express notice of the claim of title by the defendants to a part of the land conveyed to the plaintiffs, but also with express notice that this claim of adverse possession was fully known to their grantor, the Iron & Coal Company, and that the company refused to include it within the operation of their deed, or to warrant any title to it on their part. In view of this positive recognition of the adverse title of the defendants, and their very long acquiescence in it, and of their never having brought any action of ejectment to recover it, it is difficult to perceive any ground for the assertion that the title of the defendants was held by the permission of the Coal & Iron Company and not adversely to them.

Nor did the testimony show any such state of facts. An

effort was made to prove that there was by a legal implication such a permissive occupancy, having the force of subserviency to the title of the Coal & Iron Company, as to the land in dispute, but it was entirely abortive, and the offer of the testimony was properly rejected by the court below.   It was an offer to prove that there was a memorandum on the Coal & Iron Company's sales book, followed by an account on their ledger, to the effect that there was a sale on September 1, 1851, to Barrett and Gordon of a lot fifty feet on Carbon street and fifteen feet on the rear.   Of course a contract for the sale of land cannot be proved in any such manner as that, but even if the evidence had been admitted, it could not possibly have justified any inference that the defendants took title to the land in dispute here, which was no part of the land referred to in the memorandum, in subserviency to the title of the Coal & Iron Company.   Moreover the contract, whatever it was, became merged in the deed which was subsequently made, and which was given in evidence on the trial.   Hence the plaintiffs had all the benefit they could have had if the memorandum on the sales book had been received in evidence.   We cannot however accept the proposition that where a deed is taken for land which is part of a larger tract belonging to the vendor, the vendee cannot acquire by adverse possession land outside of his deed which was a part of the tract from which his purchase was made.   Granting that he knew that such outside land belonged to his grantor, we cannot understand why he might not occupy it adversely, and if such occupation was permanent, continuous, visible and notorious, and was at all times in hostility to the right of the owner, and was maintained during the full period of twenty-one years, we know of no reason why such a possession will not confer a good title.

The learned court below in the charge to the jury explained this entire subject carefully, minutely and with entire correctness, and the jury found by their verdict that a good title to the land in question was acquired by the defendants by adverse possession.   That the whole matter was exclusively for the jury is too plain for argument.   The testimony to a continuous occupation of the land in question by the defendants and those under whom they claimed, for purposes of residence in part, and for domestic uses for a period of nearly or quite forty years, without interruption was voluminous, precise, definite and positive.

It was amply sufficient not only to warrant its submission but to justify the verdict. It would have been most serious error to withdraw it from the jury and we can see no reason to question the propriety of the verdict. We cannot sustain any of the assignments of error.

Judgment affirmed.